Filed 10/5/15  Stephens v. Alta Bates Summit Medical Center CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION 2

| | |
|---|---|
| LOIS STEPHENS, et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>ALTA BATES SUMMIT MEDICAL CENTER, et al.,<br><br>        Defendants and Respondents. | A138244<br><br>(Alameda County<br>Super. Ct. No. RG08425997) |

## INTRODUCTION

Plaintiffs Lois Stephens, Billie Genereux, Mitchell McClain, and Archie McClain filed the instant action asserting claims of medical negligence and wrongful death relating to their mother's death.  After trial, a jury unanimously found for defendants.  Plaintiffs, proceeding in propria persona, have appealed the judgment, arguing that the trial court erred in denying their motion to amend their complaint and challenging the conduct and outcome of the jury trial.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Corine Davis died in September 2007 while admitted as a patient at Alta Bates Summit Medical Center.  On December 17, 2008, plaintiffs, represented by counsel, filed the instant action alleging that defendants—Alta Bates Summit Medical Center and the doctors and physician assistant who were responsible for Davis' care—were responsible for Davis' death.  The complaint alleged three causes of action: medical negligence, elder abuse, and wrongful death.  Several months later, plaintiffs' counsel filed a motion to be

1

relieved as counsel, citing an irreparable breakdown in attorney-client communication. The trial court granted this motion on September 11, 2009.

On December 28, 2009, plaintiffs, proceeding in propria persona, filed a motion to amend their complaint. The proposed complaint, styled by plaintiffs as the "2nd Amended Complaint for Damages," contained extensive factual allegations regarding Davis's medical treatment, was over 50 pages and 195 paragraphs long, and asserted four causes of action: medical negligence, elder abuse, inducement of fraud, and a claim under Civil Code section 1790.[1]

The trial court denied plaintiffs' motion to amend without prejudice. It stated: "A complaint shall contain 'a statement of the facts constituting the cause of action in ordinary AND CONCISE language.' (Code of Civil Procedure section 425.10(a)(1); emphasis added.) Plaintiffs' proposed Second Amended Complaint, which runs on for 56 pages and contains 195 paragraphs, does not clearly set forth the facts supporting plaintiffs' claims in concise language. Plaintiffs may, if they choose, prepare a proposed pleading that clearly AND CONCISELY states the facts supporting plaintiffs' claims, and seek leave of court to file that pleading." The court further found that plaintiffs could not state a claim under Civil Code section 1790 as that section "appl[ies] to the sale or lease of products, not to claims arising from providing medical services." To the extent plaintiffs meant to state a claim under Civil Code section 1708,[2] as opposed to section 1790, the court found such a claim would merely duplicate their medical malpractice claim.

On March 19, 2010, plaintiffs filed a second motion to amend their complaint. The proposed amended complaint, styled this time as the "First Amended Complaint," was 32 pages long and contained 61 numbered paragraphs and again provided details regarding Davis's treatment while admitted at Alta Bates Summit Medical Center. This

---

[1] Civil Code section 1790, et seq. is the Song-Beverly Consumer Warranty Act.

[2] Civil Code section 1708 provides: "Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his or her rights."

proposed complaint asserted five causes of action: medical negligence, elder abuse, wrongful death, inducement of fraud, and a claim under Civil Code section 1708.  The trial court again denied plaintiffs' attempt to amend their complaint, stating: "The Motion to File a First Amended Complaint is once again DENIED without prejudice.  Plaintiffs are referred to the court's February 9, 2010, order denying their prior motion for leave to amend the complaint and the reasons given for the denial, specifically the requirement that a complaint must contain a statement of the facts constituting the cause of action in ordinary and concise language to be legally sufficient."  No further attempt to amend the complaint was made.

On September 23, 2010, plaintiffs filed a substitution of attorney naming attorney Peter C. Pappas as their attorney of record.

On November 19, 2010, defendants John Bry, Stephen Etheredge and Kathryn Landau filed a motion for summary judgment.  After briefing and a hearing, the trial court granted-in-part and denied-in-part defendants' motion.  The court denied the motion as it applied to Bry and Landau, finding that plaintiffs had introduced sufficient evidence to raise a triable issue as to whether Bry and Landau met the applicable standard of care and whether any failure to meet this standard of care caused Davis's death.  The court, however, granted the motion for summary judgment as it applied to defendant Etheredge, finding that plaintiffs' expert declaration did not create a triable issue as to whether Etheredge breached the standard of care or otherwise contributed to Davis's death.  An order of judgment in favor of defendant Etheredge was served on plaintiffs' counsel on March 9, 2011.

On January 18, 2012, plaintiffs voluntarily dismissed, with prejudice, all claims against defendant Landau.

On November 26, 2012, a jury trial on plaintiffs' medical negligence and wrongful death claims began against defendants John Bry, John Donovan, and Alta Bates Summit

3

Medical Center.[3]  Testimony was heard over nine days.  On December 13, 2012, the trial court instructed the jury and the jury retired to deliberate.  Later that afternoon, the jury returned a unanimous 12-0 verdict in favor of the defendants finding that defendants had not been negligent in their treatment of Davis.

After judgment was entered, defendants Bry, Etheredge, and Donovan filed memoranda of costs in the amount of $60,899.65.  Relevant to this appeal, Bry and Etheredge's memorandum of costs included $1,500 paid to Dr. Sebastian Conti— plaintiff's expert.  On February 11, 2013, Plaintiff Lois Stephens, though still represented by counsel (Pappas) at that time,[4] filed a motion to tax defendants' costs and a "Motion to Vacate and Set Aside Entry of Judgment Under Principle of UnClean Hands."  Plaintiff's motion to tax costs largely complained about Pappas's performance and expenses, but Defendants opposed both motions, and on February 26, 2013, the trial court denied the motions following a hearing.

Plaintiffs filed their notice of appeal on March 13, 2013, identifying 17 orders from which they were appealing, including the final judgment.  Plaintiffs' submitted an initial Designation of the Record on April 9, 2013.  Plaintiffs requested a clerk's transcript, but indicated that the record of the oral proceedings would be provided by settled statement pursuant to California Rule of Court, rule 8.137 (rule 8.137).[5]  Plaintiffs

---

[3] In March 2009, plaintiffs, through their first counsel, voluntarily dismissed without prejudice their elder abuse cause of action against defendants Bry, Etheredge, Landau, and Alta Bates Summit Medical Center.  On February 23, 2011, plaintiffs voluntarily dismissed their second cause of action as to defendant Donovan.

[4] On March 12, 2013, plaintiff Lois Stephens filed a substitution of attorney form indicating that she was representing herself.  On April 15, 2013, the trial court granted Pappas's motion to be relieved as counsel.

[5] Rule 8.137 provides a mechanism by which an appellant can move to have the appellate record include a "settled statement instead of a reporter's transcript."  (Rule 8.137(a)(1).)  The appellant must support the motion to use a settled statement by showing one of three things: (1) "[a] substantial cost saving will result and the statement can be settled without significantly burdening opposing parties or the court;" (2) "[t]he designated oral proceedings were not reported or cannot be transcribed;" or (3) the

4

attached what appeared to be self-prepared transcripts of three small parts of the trial as the "Settled Statements." Plaintiffs were informed that their appeal could not be processed because the designation of the record was not in compliance with rule 8.137.

Plaintiffs then filed a "Motion For An Settled Statement" on April 23, 2013, which simply attached the same self-prepared transcripts. Defendants opposed the motion for a settled statement, arguing that plaintiff had failed to make the showing required by rule 8.137. Additionally, they argued, "Plaintiffs complicated and broad-based attack upon almost every single decision of this Court and jury is not the type of appeal for which a settled statement is the appropriate appellate record." The trial court denied plaintiffs' motion for a settled statement. The plaintiffs then filed a new designation of the record, this time checking the box stating that they were electing to proceed "WITHOUT a record of the oral proceedings in the superior court. I understand that without a record of the oral proceedings in the superior court, the Court of Appeal will not be able to consider what was said during those proceedings in determining whether an error was made in the superior court proceedings."

### DISCUSSION

In their notice of appeal, plaintiffs listed 17 trial court orders from which they claimed to be appealing.[6] In their opening brief, however, plaintiffs have failed to raise specific arguments as to most of these orders. "Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the

_____

"appellant is unable to pay for a reporter's transcript and funds are not available from the Transcript Reimbursement Fund." (Cal. Rules of Court, rule 8.137(a)(2)(A)(B)(C).)

[6] The notice of appeal in this case, like plaintiffs' opening brief before us, was signed only by plaintiff Lois Stephens. California Rules of Court, rule 8.100(a)(1) provides that the "appellant or the appellant's attorney must sign the notice [of appeal]." "This language has been construed, however, to allow '*any person*, attorney or not, who is empowered to act on appellant's behalf,' to sign the notice of appeal." (*Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1216, quoting *Seeley v. Seymour* (1987) 190 Cal.App.3d 844, 853 (*Seeley*).) "[W]e must conclude [plaintiff] was authorized to . . . act [on behalf of the other plaintiffs] in the absence of a clear and satisfactory showing that such authority was lacking." (*Seeley*, *supra*, 190 Cal.App.3d at p. 853.) For this reason, we assume that all named plaintiffs are parties to this appeal.

issues waived." (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.) Accordingly, we address only those arguments specifically argued in plaintiffs' opening brief.[7]

I.      *Trial Court's Denial of Plaintiffs' Motions to File an Amended Complaint*

Plaintiffs argue that the trial court erred when it denied plaintiffs' second motion to amend their complaint. They argue that while the original complaint generally alleged that the defendants had been negligent, the proposed "First Amended Complaint" provided specific facts regarding how each defendant provided substandard medical care to Davis. According to plaintiffs, they were prejudiced by this denial because it denied them the opportunity to prove their negligence and wrongful death claims by showing that defendants had failed to abide by "appropriate Management procedures." We conclude that the trial court did not abuse its discretion in denying plaintiffs' motion to amend their complaint.

Code of Civil Procedure section 473 provides, in relevant part, that a court "may, in furtherance of justice, and on any terms as may be proper, allow a party to amend any pleading[.]" (Code Civ. Proc., § 473, subd. (a)(1).) This section "has received a very liberal interpretation by the courts of this state." (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 544 (*Thompson*).) The policy favoring amendment "is so strong that it is a rare case in which denial of leave to amend can be justified." (*Howard v. County of San Diego* (2010) 184 Cal.App.4th 1422, 1428.) Nonetheless, " '[a]n application to amend a pleading is addressed to the trial judge's sound discretion. [Citation.] On appeal the trial court's ruling will be upheld unless a manifest or gross abuse of discretion is shown. [Citations.] The burden is on the [appellant] to demonstrate that the trial court abused its discretion.' " (*Thompson*, *supra*, 155 Cal.App.4th at p. 544, quoting *Sullivan v. City of Sacramento* (1987) 190 Cal.App.3d 1070, 1081.)

---

[7] For example, plaintiffs have waived any arguments regarding the trial court's summary judgment order in favor of defendant Etheredge or their voluntary dismissal of defendant Landau and their elder abuse claim.

Under Code of Civil Procedure section 425.10, subdivision (a)(1), a complaint must contain a "statement of the facts constituting the cause of action, in ordinary and concise language." The trial court did not abuse its discretion in finding that plaintiffs' proposed "First Amended Complaint" did not use "ordinary and concise language." While plaintiffs' negligence and wrongful death theories are not complicated—defendants answered the initial eight-page complaint and the case proceeded on that complaint for over a year prior to plaintiffs' request to amend—plaintiffs' proposed "First Amended Complaint" was over 30 pages long and contained 61 separately numbered paragraphs. These paragraphs described defendants' medical treatment of Davis in minute detail, often using medical terminology that is not defined or otherwise explained.

In addition, even if plaintiffs could establish that the trial court erred in denying their motion to amend, reversal would not be required because plaintiffs have failed to make a reasonable showing of prejudice from the trial court's ruling. (*Honig v. Financial Corp. of America* (1992) 6 Cal.App.4th 960, 965.) Plaintiffs argue that the denial of leave to amend denied them a "fair trial in that the specific criteria that Defendants were liable by their Failure to engage in appropriate Management Procedures was not allowed at Plaintiffs Trial." Apart from this unsupported statement, however, plaintiffs have not shown that they were actually prevented from introducing any evidence at trial as a result of the trial court's denial of their motion to amend their complaint.

II.     *Plaintiffs' Arguments Regarding the Performance of Counsel*

On appeal plaintiffs argue that their trial counsel was incompetent for a number of reasons, such as failing to seek special damages, failing to introduce certain evidence, and relying on an unqualified expert. Plaintiffs contend that the trial court should have declared a mistrial because Pappas's ineffective assistance undermined their right to a fair trial. This argument is without merit.

"In a criminal prosecution the defendant has the right to competent representation at trial based on the constitutional right to the assistance of counsel for his defense. [Citations.] There is no equivalent constitutional right in a civil proceeding." (*Kim v. Orellana* (1983) 145 Cal.App.3d 1024, 1027 (*Orellana*); see also *White v. Board of*

7

*Medical Quality Assurance* (1982) 128 Cal.App.3d 699, 707 ["We are unaware of any authority which would permit this court to reverse the trial court's decision, grant a retrial to the unsuccessful litigant on the grounds of incompetence of counsel in this a civil action . . . . While due process requires the right to counsel, the right to 'effective' counsel in civil proceedings that lack overhanging criminal penalties has yet to be recognized."] ) In addition, an attorney "has complete charge and supervision of the procedure that is to be adopted and pursued in the trial of an action; the manner of trial and like matters are within the sphere of the attorney's general authority, and as to those matters his client is bound by his action. . . . 'If it appears that the attorney was negligent in the matter the client's remedy is against [the attorney] personally. The trial judge and opposing counsel are justified in relying upon the apparent and presumptive authority of the attorney and in acting on that basis.' [Citation.]" (*Orellana*, *supra*, 145 Cal.App.3d at p. 1027.)

Plaintiffs chose to hire Pappas and to have him represent them at trial. As a result they are bound by Pappas's actions or inactions. To the extent that Pappas performed poorly or made unwise tactical decisions, the trial court was under no obligation to monitor his performance and declare, sua sponte, a mistrial on plaintiffs' behalf. Pappas's allegedly deficient performance does not require reversal of the jury verdict.

III.   *Plaintiffs' Juror Misconduct Argument*

Plaintiffs contend that the trial court should have ordered a mistrial because a juror allegedly told one of the defendants that "she felt sorry" for him. However, plaintiffs have not supplied declarations or other evidence describing what was said and when. Thus, plaintiffs have failed to supply an adequate appellate record to permit review of this argument. (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 ["Appealed judgments and orders are presumed correct, and error must be affirmatively shown. [Citation.] Consequently, plaintiff has the burden of providing an adequate record."].)

Additionally, plaintiffs concede that Pappas, despite being aware of the juror's statement, did not move for a mistrial on the basis of the juror's statement. " ' "Failure to

8

object to the misconduct of jurors as soon as knowledge thereof is obtained and opportunity to object is presented is a waiver of the right to object[.]" ' " (*Gimbel v. Laramie* (1960) 181 Cal.App.2d 77, 84; see also *Markaway v. Keesling* (1963) 211 Cal.App.2d 607, 611 ["It is a well-established rule in this state that when knowledge of [juror] irregularity is known in time to apply to the court to remedy or correct it, a party may not sit by in silence and keep the point in reserve, taking a chance on a favorable verdict, and after a hostile one, then, for the first time, be heard to complain."]). Accordingly, plaintiffs have waived any claim of juror misconduct.

IV.    *Trial Court's Denial of Plaintiff's Motion to Tax Costs*

Though not entirely clear, plaintiffs appear to challenge the trial court's denial of plaintiff Stephens's motion to tax defendants' costs. They argue they are "entitled to . . . tax costs [sic] based on judicial error; misconduct [attorney incompetence] in conjunction with coll[u]sion/sabotage [sic] of trial process by defendants & attorney Papas [sic]." Plaintiffs, however, have argued that the expenses incurred by Pappas, their own attorney, were unreasonable. Plaintiffs' disagreement with their own attorneys' expenses is not a proper basis for taxing defendants' costs.

The one challenge plaintiffs make with regards to *defendants'* costs is that defendants paid plaintiffs' expert $1,500. Plaintiffs argue that this "raises a question of sabotage and or coll[u]sion." Plaintiffs object to defendants' counsel's request for reimbursement of these fees because defendants' counsel "knew that [Conti] was not an expert." Defendants' payment to Conti is not evidence of "sabotage and or coll[u]sion." Rather, under Code of Civil Procedure section 2034.450, subdivision (a), the "party taking the deposition of an expert witness shall . . . tender [the expert's] fee at the commencement of the deposition." Accordingly, defendants were required to pay Conti's fee when they took his deposition.[8] To the extent that plaintiffs challenge other

_____

[8] Bly and Etheredge's memorandum of costs listed Conti's fee pursuant to Code of Civil Procedure section 998. Under this provision, if a defendant makes an offer to compromise that is rejected by the plaintiff, and the plaintiff fails to obtain a more favorable judgment, the court may, in its discretion, require the plaintiff to pay a

9

costs, they have failed to explain why such costs were unreasonable or otherwise not properly included in the trial court's award of costs.

Plaintiffs have failed to demonstrate that the court erred in denying plainiff Stephens's motion to tax defendants' costs.

V.    *Plaintiffs' Arguments Relating to the Jury Trial*

Plaintiffs' remaining arguments relate to the conduct and outcome of the jury trial. However, after plaintiffs' motion to obtain a settled statement was denied, plaintiffs opted to proceed on appeal without obtaining a reporter's transcript.  As a result, plaintiffs have failed to produce an adequate appellate record that would allow us to review their remaining claims.

"It is well settled . . . that a party challenging a judgment has the burden of showing reversible error by an adequate record."  (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 (*Ballard*).)  Similarly, " '[i]t is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations.' "  (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.)  Although plaintiffs are proceeding in propria persona, they are "not entitled to special treatment and [are] required to follow the rules."  (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 523; see also *Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1209 ["[An in propria persona] party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys."].)

---

reasonable sum to cover the costs of expert witnesses.  (Code Civ. Proc., § 998, subd. (c)(1).)  In opposing plaintiff Stephens's motion to tax costs before the trial court, Bly and Etheredge defended the inclusion of Conti's fee on the ground that Bly had submitted to plaintiffs a section 998 offer of compromise on June 20, 2011 – roughly two and a half years into the case.  Pursuant to this offer to compromise, Bly agreed to waive his right to recover costs in exchange for a dismissal with prejudice.  Plaintiffs have not argued that the inclusion of the Conti deposition fee was improper under section 998, so we do not reach this issue.

10

First, plaintiffs argue that there was "insufficient evidence" to support the jury's verdict that defendants were not negligent and that the trial court should have "overturned" the verdict because it was "inconsistent" with the evidence and law. They also argue the trial court erred by permitting plaintiffs' own expert witness to testify because he was not, in fact, an expert. However, "[w]here no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters*. To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error. [Citation.] The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992.)[9]

Second, plaintiffs contend that the trial court failed to properly instruct the jury on the theory of negligence. Without a reporter's transcript, however, we have no way to know what instructions were given. Further, even if it is assumed the trial court's negligence instruction was erroneous, "[i]n the absence of [an adequate] record, we have no way of ascertaining whether it is reasonably probable that . . . the alleged . . . instructional error affected" the outcome in this case. (*Ballard*, *supra*, 41 Cal.3d at p. 574.)

## DISPOSITION

The judgment is affirmed.

---

[9] In several places in their opening brief, plaintiffs challenge the trial court (and their counsel's) treatment of a 2008 report by the California Department of Public Health. However, the trial court's evidentiary rulings regarding this report are "*conclusively presumed correct*" in light of plaintiff's failure to provide a reporter's transcript that would allow this court to review that ruling. (*Estate of Fain, supra,* 75 Cal.App.4th at p. 992.)

11

_____
Miller, J.

We concur:

_____
Richman, Acting P.J.

_____
Stewart, J.